## COMMONWEALTH *vs.* WILLIAM M. DEVLIN.

Middlesex.　Jan. 4. — April 1, 1886.　C. ALLEN & GARDNER, JJ., absent.

If, at the trial of an indictment for obtaining goods by false pretences, the jury are instructed that the government must prove that the pretences were made designedly and with an intent to defraud, and were false, the jury need not further be instructed that the falsity of the pretences is not enough, unless the defendant also knew that they were false.

At the trial of an indictment for effecting the sale and delivery of certain sheep by A., on the false pretences of the defendant that he had money in the bank upon which a check given by the defendant in payment of the price of the sheep was drawn by him, and that it was a good and available check for the amount thereof, there was evidence that A. agreed to sell the defendant the sheep for cash at a certain price per pound; that they were then weighed, and were recorded by the weigher to the defendant in a book kept for that purpose; that, "about an hour or so" after the weighing, A. and the defendant met to settle, no bill having been before made out, nor the weights reckoned; that the weights were then reckoned; that A. demanded cash, but was induced to take a check for the amount by the representations of the defendant that he had the money in the bank, and that the check was good. There was contradictory evidence as to whether, by custom, the weighing of the sheep and the recording in the weigher's book constituted a delivery. On this point the jury were instructed, that, if the defendant proved the custom, yet if the sale to the defendant was a sale for cash, then it was a conditional sale, and vested no title in the defendant until delivery; that a mere constructive, or even a manual delivery, would not in such a case deprive the owner of his property; and that, to have such an effect, the delivery must be absolute, under such circumstances as to show a waiver of such condition. *Held,* that the ruling was correct.

An indictment alleged that the defendant, at a time and place named, with intent to cheat and defraud, "and with the view and intent to effect the sale and delivery hereinafter mentioned, did then and there unlawfully, knowingly, and designedly falsely pretend and represent to" A. certain facts stated; and that A., "then and there believing the said false pretences and representations, so made" by the defendant, "and being deceived thereby, was induced by reason of the false pretences and representations, so made as aforesaid, to sell and deliver, and did then sell and deliver," to the said A. certain goods described, of the property of the said A.; and the said defendant "did then and there receive and obtain the said goods .... by means of the false pretences and representations aforesaid." *Held,* that the indictment sufficiently alleged a sale, that the owner was induced to sell and deliver the property, that the defendant obtained it by means of the false pretences, and that the defendant knew the pretences to be false.

If the instructions given to the jury are correct and sufficient, the court will not scrutinize the requests for instruction of the excepting party, if they are needlessly voluminous.

INDICTMENT in three counts. The second count alleged that the defendant, on January 8, 1884, at Watertown, " with intent

to cheat and defraud one Charles H. Kidder, and with the view and intent to effect the sale and delivery hereinafter mentioned, did then and there unlawfully, knowingly, and designedly falsely pretend and represent to said Charles H. Kidder that he, the said William M. Devlin, had then authority to draw a certain check and order for the payment of money, to wit, a check and order for the payment of money for the sum of four hundred and eighty-five dollars and ten cents upon the Howard National Bank of Boston in the county of Suffolk and in said Commonwealth; and that a sum of four hundred and eighty-five dollars and ten cents, belonging to him the said William M. Devlin, was then in the possession of the said Howard National Bank, and that a sum of four hundred and eighty-five dollars and ten cents was then payable and could be paid by the said Howard National Bank on the credit and on the account of the said William M. Devlin, as soon as a check and order for the payment of the same, signed by the said William M. Devlin, authorizing the said Howard National Bank to make such payment, should be presented at the place of business of the said Howard National Bank, at Boston in the said county of Suffolk; and that a certain check and order for the payment of money, purporting to be drawn by the said William M. Devlin on said Howard National Bank, which he the said Devlin then and there had and produced to the said Charles H. Kidder, and which was of the tenor following, that is to say, — ' $485.10. Boston, Jan. 8, 1884. The Howard National Bank of Boston, Howard Bank Building, No. 19 Congress Street. Pay to C. H. Kidder or order four hundred and eighty-five $\frac{10}{100}$ dollars. Wm. M. Devlin,' — was then and there a good available check and order for the payment of money for the sum of four hundred and eighty-five dollars and ten cents, and was then and there of the value of four hundred and eighty-five dollars and ten cents; and that he the said William M. Devlin then and there had money in the hands of the said Howard National Bank for the payment of the said check and order for the payment of money; and that he the said William M. Devlin had then and there full power, right, and authority to draw said check and order for the payment of money upon said Howard National Bank for said sum of four hundred and eighty-five dollars and ten cents. And the said Charles H.

Kidder, then and there believing the said false pretences and representations so made as aforesaid by him, the said William M. Devlin, and being deceived thereby, was induced, by reason of the false pretences and representations so made as aforesaid, to sell and deliver, and did then and there sell and deliver, to the said William M. Devlin, and accept in payment therefor said check and order for the payment of money, then and there delivered by the said William M. Devlin to the said Charles H. Kidder in payment for the same, one hundred and nineteen sheep, each of the value of four dollars and twenty-five cents, of the proper goods, effects, and personal property of the said Charles H. Kidder. And the said William M. Devlin did then and there receive and obtain the said goods, personal property, and effects of the said Charles H. Kidder by means of the false pretences and representations aforesaid, and with intent to cheat and defraud the said Charles H. Kidder of the same goods, personal property, and effects. Whereas in truth and in fact the said William M. Devlin had not then and there any power, right, or authority to draw said check and order for the payment of money upon said Howard National Bank of Boston. And whereas in truth and in fact the said William M. Devlin had not then in the possession of the said Howard National Bank of Boston the sum of four hundred and eighty-five dollars and ten cents belonging to him the said William M. Devlin. And whereas in truth and in fact a sum of four hundred and eighty-five dollars and ten cents was not then payable by the said Howard National Bank on the credit and on the account of the said William M. Devlin. And whereas in truth and in fact the said check and order for the payment of money was not then and there a good and available order for the payment of the sum of four hundred and eighty-five dollars and ten cents, and was not then and there of the value of four hundred and eighty-five dollars and ten cents. And whereas in truth and in fact the said William M. Devlin had not then the money in the hands of the said Howard National Bank for the payment of the said check. And whereas in truth and in fact the said William M. Devlin did not then and there have any right, power, or authority to draw said check and order for the payment of money upon said Howard National Bank for said sum of four hundred and

eighty-five dollars and ten cents, as he then and there well knew. And so the jurors aforesaid upon their oath aforesaid do say that the said William M. Devlin, by means of the false pretences aforesaid, on the said eighth day of January in the year of our Lord one thousand eight hundred and eighty-four, at Watertown aforesaid, unlawfully, knowingly, and designedly did receive and obtain from said Charles H. Kidder the said goods, personal property, and effects of the said Charles H. Kidder with intent to defraud. Against the peace of said Commonwealth and contrary to the form of the statute in such case made and provided."

The third count differed from the second in these particulars only: the name of the person alleged to be defrauded was DeWitt C. Blanchard; the amount of the check was $338.60, payable to the order of said Blanchard; and the number of sheep was ninety-eight.

Before the jury were empanelled, the defendant filed three motions to quash the indictment. The first motion assigned the following reasons:

" 1. Because, as alleged, it does not appear what the bargain and sale was, or that the defendant in consequence of such bargain and sale, if any such is sufficiently set out, received said goods from the complainant. 2. It is not properly alleged that the defendant, at the time he made the alleged pretences, knew that they were false; that is, no proper *scienter* is alleged."

The reasons assigned in the second and third motions, so far as they were afterwards insisted upon, were as follows:

" It is not alleged in any of said counts that Kidder or Blanchard received said check."

" In none of said counts is it alleged that said defendant received said goods from said complainants."

These motions were overruled.

At the trial in the Superior Court, before *Pitman*, J., Charles H. Kidder, a witness for the government, testified, in substance, as follows: I saw Devlin on the morning of January 8, 1884, and he looked at my sheep in one building and at Blanchard's sheep in another building, at my request, and one third of the gain or loss on the sale of them was to be mine. Devlin made an offer of five and a quarter cents per pound for my sheep, and

four and three quarters cents per pound for Blanchard's lot. I told Devlin I would sell him both lots at the same time, if Blanchard was willing. I then sent for Blanchard and told him in a private interview with him, within eight or ten feet of Devlin, in a low tone of voice, what Devlin's offer was for his, Blanchard's, sheep (Blanchard having nothing to do with my sheep). Blanchard said, if he would not pay any more, to let him have them if he would pay the money for them. Devlin spoke up and said he would pay for them and had plenty of money to do so; I then sold both lots together. I did all the trading, and Blanchard assented to it; nothing else was said. In about an hour after that, it might have been longer or shorter, I had both lots of sheep weighed off to the defendant, driving them on to the scales for that purpose in the weighing-house, and they were so recorded to the defendant by the weigher in his book kept for that purpose. At the request of myself or Blanchard, and after they were so weighed, they were driven back to the same yards, although it is just as customary to put them in different yards, just as it is directed or requested by the buyer, and I cannot say whether Devlin assisted in driving the sheep or not; about an hour or so after the weighing off as aforesaid, Blanchard, Devlin, and I went into the cattle-weighing building on the opposite side of the street to settle up. In the mean time no bill had been made out for the sheep, nor their weights reckoned up; then we reckoned up the amount, and Devlin took out his check-book to give a check. I told him I did not want a check, using an oath, but I wanted the money. Devlin said he had the money, but did not carry it around with him; that he had plenty in the bank; said the check was good; therefore I took the check, being induced to do so by these representations, and nothing further was said about the sheep, and nothing further was done about them. Then I went to Boston to the bank and presented the check; they threw it back, and did not pay it, and it has never been paid. I then returned to Watertown to find Devlin, and looked for the sheep; I found neither; never saw the sheep after this. I next received notice to meet Devlin's creditors on the following Tuesday, and went to the office of his attorneys, where an offer of settlement on a percentage was made, which was not accepted.

DeWitt C. Blanchard, in behalf of the government, testified, in substance, that the bargain and sale of the lot of sheep in which Kidder was to share one third of the gain or loss on the sale of the same, was made by Kidder as Kidder stated in his testimony; that the sheep were weighed off by Kidder to Devlin as stated by Kidder, and all the conversation with regard to the check was had by Kidder with Devlin as testified to by him; that when the bargain and sale was made by Kidder of this lot with Devlin, his assent was given to the sale if Devlin would pay the money, and Devlin said he had money; that he did not know just how he said this; that Devlin gave him two checks; that all the conversation with regard to the checks, as well as with regard to the weighing off the sheep and the sale of them, was had by Kidder with Devlin; that nothing further was said or done about the sheep, after they were weighed off and put in the yards, and that he was induced to take the checks by reason of representations made by Devlin to Kidder that he had the money in the bank, and that they were good.

The government relied upon the statement and false pretense that Devlin said " he had plenty of money to pay with."

There was other evidence tending to confirm what Blanchard and Kidder said, and also that there was not sufficient money in the bank to meet the checks.

There was evidence by several witnesses on behalf of the defendant, tending to show that Kidder had admitted that there were no representations or statements made, as to how or when the goods were to be paid for, until after the sale and delivery of them, and that the sale and delivery had taken place before any checks were spoken of or given, or any representations with regard to checks were made, — which was denied by Kidder.

There was also much evidence in behalf of the defendant tending to show that there was a custom or usage well defined, uniform, universal, and of long continuance, that, the bargain of sale having been made between the seller and buyer, the driving of the sheep on to the scales by the seller and weighing them off to the buyer, and having them recorded in the weigher's book to the buyer and then driven off, whether to the same yard from which they were taken or not, constitutes a delivery. Witnesses for the government testified that they knew of no such custom.

There was also evidence that the defendant had a promissory note for $2500 in the hands of one Goodnough, one of the directors of the Union Market Bank at Watertown, for discount at this time, which had been in his hands for some days, and he promised the defendant to have it discounted; that the defendant spoke to Goodnough on the day or evening of January 7, 1884, about the discount of said note, and Goodnough gave him encouragement that it would be discounted, though he never spoke to the other directors of the bank about it; and that the defendant expected to get this money.

There was further evidence that the defendant had been accustomed to borrow a great deal of money of one Donnelly, from time to time, on a credit of a few days, and then repaying the same; that between January 1 and 8, 1884, Donnelly agreed and promised the defendant to let him have between five and six thousand dollars on January 8, 1884, and on the latter day the defendant called upon Donnelly between eleven and twelve o'clock for the money to put in the bank, and he refused to let him have it because he said he had heard that his checks had gone to protest. Kidder and Blanchard testified that their checks were given about or a little before ten o'clock A. M.

Upon the foregoing evidence, the defendant presented to the judge forty-one requests for instructions, which, in view of the opinion, it seems unnecessary to state. The judge refused to rule as requested, but instructed the jury on the points covered by defendant's requests as follows, after reading the statute on which the indictment was found :

" The government must bring its case within the statute, and must prove every element and fact necessary to establish a case under the statute, as in other criminal cases, beyond a reasonable doubt. The government must prove this charge, and not something else ; and a mere intention to obtain the property without paying for it, or otherwise to cheat and defraud the owners, would not authorize the conviction of the defendant. The government must satisfy the jury:

" 1. That some of the pretences of an existing fact alleged in the indictment were made by the defendant.

" 2. That they were made designedly, and with an intent to defraud.

" 3. That such pretence or pretences were false.

" 4. That the property was obtained by means of such false pretences, that is, that but for such pretences the owner would not have parted with his property.

" The defendant contends that he has proved a delivery of the property, according to a custom, before the pretences were made which are relied on, and that therefore the property was not obtained by the defendant through such pretences. His contention that such custom may be established by a preponderance of evidence is correct in law, and, if established as he claims, would affect the owner with knowledge of it; but the jury will consider that a delivery may be an absolute or a conditional delivery, and the law is this: that, if the sale to the defendant was a sale for cash, then it was a conditional sale, and vested no title in the purchaser until payment. A mere constructive, or even a manual delivery, would not in such a case deprive the owner of his property. In order to have such an effect, the delivery must be absolute, under such circumstances as to show a waiver of such condition of sale."

The jury returned a verdict of guilty on the second and third counts, and of not guilty on the first count. The defendant alleged exceptions.

*B. C. Moulton & C. F. Loring*, for the defendant.

*E. J. Sherman*, Attorney General, for the Commonwealth.

HOLMES, J. The instruction that the government must prove that the alleged false pretences were made designedly, and with an intent to defraud, as well as that they were false, conveyed to the jury, with perfect plainness, that the falsity of the pretences was not enough, unless the defendant also knew they were false.

The main question arises on the fourth instruction. The evidence was that the representations were made about an hour after the sheep had been weighed off and recorded to the defendant in the weigher's book, in pursuance of an agreement of purchase by the defendant. The only dispute of fact at the trial, material to the instruction, seems to have been whether what had taken place amounted to a delivery. We must take it that there was evidence that a delivery had been made. The strength of the defendant's case is, that, even if by the terms of the bargain a sale is to be for cash, a delivery before payment *prima facie*

waives the condition of concurrent payment and passes the property; *Haskins* v. *Warren,* 115 Mass. 514; and that, if there was anything to prevent this operation of the delivery in the present case, the burden was on the government to prove it, whereas the instruction might have been thought to throw the burden on the defendant.

We think, however, that the instruction, when applied to the evidence, sufficiently guarded the defendant's rights. In *Haskins* v. *Warren,* the delivery took place several days before payment was demanded. The principle of that case does not apply to a delivery intended to be substantially simultaneous with payment, but which happens to precede it by a few minutes. For instance, if, upon a cash sale, goods should be handed across a counter before the money was put down, that would not be a waiver of the condition or a giving of credit. *Bussey* v. *Barnett,* 9 M. & W. 312. If the buyer ran off with the goods without paying for them, he would not have even a voidable title ; and if, by a false representation made the moment after putting his hands upon the goods, he induced the seller to take a check instead of cash, he could be convicted for obtaining the goods upon false pretences.

The case at bar is governed by the same principle as the one we have supposed. The delivery of the sheep was a more cumbrous operation than handing goods over a counter; but, even if it was completed before the representations were made, we think that, on all the evidence, fairly construed, it must be taken to have been made on the understanding that the payment was to be substantially simultaneous. We do not gather that this was fairly open to controversy or controverted. If the price was fixed by weight, as was testified, it could not be fixed exactly until after the weighing off, which is relied on as constituting the delivery. The parties met in about an hour for payment, and reckoned up the price, and then it was that the representations were made. The instruction excepted to evidently was given upon this view of the case, and upon this view, which the jury also have taken, was correct; for, even if the jury found that there was a completed delivery, still its operation was conditional upon immediate payment, and everything was *in fieri* until, by reason of what we must take to have been false pretences, the seller was induced

to accept a check instead of money, and to complete the sale on that changed footing. Up to that moment the title did not pass, and whether the technical doctrine be that the purchaser's custody of the sheep *ad interim* did not constitute possession in a legal sense until payment, or that to obtain the title by false pretences was within the statute, even if the defendant had the possession before, we are satisfied that, one way or the other, the facts which must have been found, under the instructions, constituted the statutory offence. It is hardly necessary to add, that, on our view, the false pretences which induced the seller to accept the checks as the price of his sheep also induced him to part with the title to the sheep for the checks.

The foregoing considerations dispose of the main argument addressed to us, so far as it seems to need an answer. To so much of it as concerns the motion to quash, it is enough to say that the indictment sufficiently alleges a sale, that the owner was induced to sell and deliver the property, that the defendant obtained it by means of the false pretences, and that the defendant knew the pretences to be false.

We do not go beyond the argument, nor scrutinize the requests for rulings very carefully, when we are satisfied that the instructions given are correct and sufficient, and the requests are so needlessly voluminous as in the present case.

*Exceptions overruled.*