# CHARLESTON.

STATE v. PISHNER.

Submitted June 5, 1913.   Decided June 17, 1913.

FALSE PRETENSES—*Delivery of Check—Insufficient Funds.*

> The making, issuance and delivery of a check on a bank in payment of a pre-existing debt, to his creditor, by one who has no funds or insufficient funds to his credit in such bank to pay the same, is not an offense under section 34, chapter 145, Code, a section added by chapter 76, Acts 1911.   (p. 604).

(LYNCH, JUDGE, absent.)

(ROBINSON, JUDGE, *dissents.*)

Error to Circuit Court, Tucker County.

Nick Pishner was convicted of crime, and brings error.

*Reversed and Entered.*

*D. E. Cuppett, Charles D. Smith* and *J. P. Scott,* for plaintiff in error.

*A. A. Lilly,* Attorney General, *John B. Morrison,* and *J. E. Brown,* Assistant Attorneys General, for the State.

MILLER, JUDGE:

Defendant was indicted, tried and found guilty of a violation of section 34, chapter 145, Code 1906, a section added to that chapter by chapter 76, Acts 1911, and the judgment complained of was that he be confined in the penitentiary for one year.

The statute provides that, "If any person make, issue and deliver to another for value any check or draft on any bank, and thereby obtain from such other any credit, money, goods or other property of value, and have no funds, or insufficient funds, on deposit to his credit in said bank with which such draft or check may be paid, he shall be guilty of a misdemeanor, if the amount of such check or draft be under twenty dollars, and upon conviction thereof be fined not exceeding one hundred dollars and confined in the county jail not less than one day nor more than thirty days, and if the amount of such check or draft be twenty dollars or over he shall be guilty of a felony and con-

fined in the penitentiary not less than one nor more than two years, and the drawer of such check or draft shall be prosecuted in the county in which he delivers the same. Provided, however, that if the person who makes, issues and delivers any such check shall, within twenty days from the time he receives actual notice, verbal or written, of the protest of such check, pay the same, he shall not be prosecuted under this section, and any prosecution that may have been instituted within the time above mentioned, shall, if payment of said check be made as aforesaid, be dismissed at the cost of defendant."

The indictment, substantially in the form prescribed by this statute, charges that defendant "on the ——— day of ————, nineteen and twelve, in the county aforesaid did unlawfully and feloniously issue and deliver unto Joe DePolla, for value, his certain check of the words and figures as follows: (describing a check for $240.56) when he, the said Nick Pishner had insufficient funds on deposit with said bank, The Miners & Merchants Bank with which to pay the same."

The undisputed evidence is that the check in question was given to DePolla on account of a pre-existing debt incurred at a general store kept by him.

There is clearly no merit in the constitutional question attempted to be raised.

The sole question of merit presented by the several rulings of the court below, on the evidence, and on the instructions to the jury given and refused, is, did the giving of the check in question, for a pre-existing debt, constitute a violation of the statute? Our opinion is that it did not. It is contended by the Attorney General that unless the statute be so construed as to affirm the proposition, it accomplished nothing, and was a useless enactment. True by section 23, of the same chapter one may be indicted and convicted of obtaining money or property by means of a false and fraudulent check given therefor, accompanied with the necessary knowledge and *animo furandi. State* v. *Hurst,* 11 W. Va. 54; *Anable* v. *Commonwealth,* 24 Grat. 563, 567-8; *Fay* v. *Commonwealth,* 28 Grat. 912; *Trogdon* v. *Commonwealth,* 31 Grat. 862. Under that statute, according to these cases, it is necessary to allege and prove the essential elements constituting the offense, namely, (1) intent to defraud; (2) actual fraud; (3) false pretense used to accomplish the

object, and, (4) that the fraud was accomplished by means of the false pretence made use of; that is they must be in some degree the cause, if not the controlling cause, which induced the owner to part with his property.   See especially *Anable* v. *Commonwealth, supra.*

What was the object and effect of the new section 34 added by the Act of 1911?  Was it to make it an offense simply to make, issue and deliver a check when the maker had no funds or insufficient funds to his credit to meet it, regardless of its effect upon the rights and property of the recipient or payee of the check?  We think not.  To constitute the offence the maker must *thereby* obtain "credit, money, goods or other property *of value*" from another.  It is not pretended that defendant obtained either of these by means of the check in question, unless, as it is insisted the entry of the check as a credit on the book of DePolla, or an extension of the time of payment, amounted to the kind of credit intended by the statute.  But no extension of time was agreed upon, and though DePolla says he gave defendant credit for the check on his account, clearly that is not the kind of credit meant by the statute.  It is true the word "credit" is often applied to an entry on the credit side of an account, but the "credit" meant by the statute clearly applies to an entry on the debit side of the ledger, or to the thing actually parted with on the faith of the false pretence.  The "credit" intended by the statute according to the very terms thereof must be a thing "of value", acquired by means of the check.  Of what value is a mere entry on a book?  Neither the check, nor entry would amount to payment.  The creditor could still sue on the original account.  He does not lose it by accepting a bogus check; nor does the mere entry of a check on the book of a creditor amount to a thing of value to the maker of the check.

But what was the purpose of enacting the new section?  We think it quite clear that the object was to constitute the making, issuance, and delivery of a check, and to thereby obtain credit, money, goods or other property of value of another, a crime, regardless of the intent, or knowledge of the maker of the condition of his account, and to burden him with the duty of knowing the fact, before issuing a check, but relieving him from the offense, which under section 23 he would not be, if within the time prescribed by the proviso of the act he shall act-

ually pay or make good the check so made and issued. This view is strengthened by the form of indictment prescribed, and which contains no averments of guilty knowledge and intent to defraud, usually required in indictments for obtaining goods, money or property by false pretences. *State* v. *Hurst, supra.*

A motion of defendant to exclude the State's evidence, which ought to have been sustained, and an instruction to the jury to find for defendant, which was denied, but which ought to have been given, would have ended the case in the court below. As we can clearly see that a different case can not be made on another trial we are of opinion to enter judgment here for defendant *non obstante veredicto,* and that he go hence without day, and be forever discharged from further prosecution in this behalf.

*Reversed and Entered.*