STATE OF WEST VIRGINIA *v.* JOHN D. AUGUSTINE

(No. 7638)

Submitted September 19, 1933.   Decided October 3, 1933.

*J. V. Gibson,* for plaintiff in error.

*Homer A. Holt,* Attorney General, *Kenneth E. Hines,* Assistant Attorney General, and *R. H. Casto,* of counsel, for the State.

WOODS, JUDGE:

John D. Augustine, a resident of Addison, Pennsylvania, was tried and convicted in Preston County on the charge of obtaining property by false pretenses. He prosecutes error to a judgment whereby he was sentenced to serve two years in the state penitentiary.

According to state's evidence, it is shown that the defendant, on July 20, 1926, contracted with one Floyd Cale and Eben Liston, to take twenty-two head of three-year old cattle, sometime between October 1st and 15th, at a stipulated price per hundred pounds, at the time making a cash payment thereon of $50.00 to hold the bargain, and agreeing to pay the remainder in cash when the cattle were actually taken up and

weighed; that defendant later, because of market conditions, requested Cale and Liston to let him have the cattle on September 21st; that the cattle, on that day, were taken to nearby scales and weighed; that nothing was said in regard to the defendant's intention not to pay cash, or his inability to do so, until the cattle had been driven some distance to the forks of the road, where they were commingled with other cattle which were then driven off by two of defendant's helpers; that after the cattle were driven off, the defendant, for purpose of settling up, executed two checks on the Citizens National Bank of Meyersdale, Pennsylvania, for $927.46 and $900.00, respectively, and upon presentation, Cale and Liston were requested to hold one check for one week and the other for two weeks, the respective dates of presentment being noted in the left-hand lower corner of each check; that Cale and Liston were admonished not to be uneasy, that said checks would be satisfied, if presented as indicated thereon—that money would be in the bank for the purpose of meeting them; that the first check was deposited in the Bruceton Bank, Bruceton, W. Va., where Liston did his banking business, on September 29, 1926; that shortly thereafter a card, bearing date October 3, 1926, was received asking that presentment of the second check be held up for an additional week; that on the following evening notice was received of protest of the first check on October 4th, by drawee bank, for want of funds; that Cale and Liston made a trip to defendant's home in regard to the matter of payment of the protested check on the 7th, and were given a note as collateral; that after their return home, a letter was received, dated October 12th, enclosing a note covering the second check, and requesting that Liston try to get one of the notes discounted at the latter's bank for a thirty-day period; that defendant sometime afterwards paid $500.00 on account of first check, the balance remaining unsatisfied at the time of the trial; and that defendant made an assignment of all his property on December 8, 1926.

The defendant attempts to offset any criminal intent by evidence to the effect that at the time he contracted for the cattle he had real property worth $42,000.00, although it brought only $21,000.00 ($2,000.00 in excess of mortgage indebtedness thereon) when sold on December 9, 1926, by the

assignee; that his entire indebtedness was not more than $31,000.00 to $38,000.00; and that if Cale and Liston had not pressed him, his other creditors would not have come in and made an assignment necessary. He admits that he did not have sufficient funds in bank on the date of the issuance of the checks; that he never had enough to meet outstanding checks; that he had less than enough to pay the first check on the date it reached the drawee bank, and that at the end of that day his balance was only thirteen cents; that the only deposit made in that bank thereafter was in the amount of $75.00, the money for the cattle being deposited in another bank; that the cattle which had been commingled were sold after the first check had been protested.

The chief issue raised on this writ of error has to do with whether or not the defendant could, under the foregoing facts, be found guilty of the offense charged.

According to Code 1931, 61-3-24, any person who obtains from another, by any false pretense, token or representation, with intent to defraud, money, goods, or other property which may be the subject of larceny, shall be guilty of a felony. In order to constitute the crime of obtaining property by false pretenses there must be "a false representation or statement of a past or existing fact, made by accused or someone instigated by him, with knowledge of its falsity, with intent to deceive and defraud, and which is adapted to deceive the person to whom it is made; a reliance on such false representation or statement; and actual defrauding; and an obtaining of something of value by accused or someone in his behalf, without compensation to the person from whom it is obtained." 25 C. J. 589. False representations may be made by acts or conduct as well as by words. In fact they "may be made in any of the ways in which ideas may be communicated." *Commonwealth* v. *Drew*, 19 Pick. (Mass.) 179, 185.

The defendant, on motion to strike the state's evidence, took the position that there was no evidence of false representations relating to a past or present fact, but only promises to pay in the future; in other words, a request for and an extension of credit. However, the prosecuting witnesses testified that they contracted for the sale of their cattle on the understanding that they were to receive cash for them. And upon defendant's

arrival they naturally expected cash. Defendant did not disillusion them in that belief, but by his silence indicated that he was ready, able and willing to pay cash upon receipt of the cattle. The cattle were delivered into the custody of defendant on the assumption that a cash settlement would be forthcoming. This, at most, was but a conditional delivery, and did not vest title in the defendant. *State* v. *Martin,* 103 W. Va. 446, 137 S. E. 885; *Commonwealth* v. *Devlin,* 141 Mass. 423, 6 N. E. 64. It was not until the settlement in which the checks were given that title to the cattle actually passed. As already recited, the checks bore notations indicating date of presentment. These checks were accepted by the prosecuting witnesses in lieu of the promised cash payment. Under the foregoing circumstances, did the giving of the checks amount to a false representation as contemplated by our statute?

The giving of a worthless check, or a check which the accused has no reason to suppose will be honored, is, in itself, a false pretense, the giving of such check being a representation, symbol, or token that the accused has money or credit with the drawee, to the amount of its face value. 25 C. J. 612, and cases there cited. In the case of *Regina* v. *Hazelton,* L. R. 2 C. C. 134, it was held that a man who makes and gives a check for the amount of goods purchased in a ready money transaction, saying that he wishes to pay ready money, makes a representation that the check is a good and valid order for the amount inserted in it; and if such person has only a colorable account at the bank on which the check is drawn without available assets to meet it, and has no authority to overdraw, and knows that the check will be dishonored on presentation, and intends to defraud, he may be convicted of obtaining such goods by such false pretense. In the consideration of that case, Pollock, B., made the pertinent statement: "I think the real representation made is that the check will be paid. It may be said that that is a representation as to a future event. But that is not really so. It means that the existing state of facts is such that in ordinary course the check will be met." But, does the fact that presentment is deferred, change the representation to a future event, or a mere promise to pay in the future? We are of opinion that

in view of the circumstances under which the parties in the instant case were dealing that the presentment of the checks and statements in regard thereto amounted to a representation of a present ability of defendant to meet the obligation represented thereby, without which the prosecuting witnesses would not have relinquished title to their property.

The sufficiency of the indictment is attacked for the first time on this writ of error. The position is taken that it alleges promises only, and does not set up a representation of a past or existing fact whereby the prosecuting witnesses were induced to give up their cattle. While the indictment may have been more artistically drawn, it suffices to say that it sets up in a general way the negotiations leading up to and culminating in the actual transfer of title in the cattle to the defendant, and sufficiently alleges a representation of a present ability to meet the obligations evidenced by said checks, and the falsity of such representation when made. Nor do we see any merit in the further contention that there should have been a definite averment to the effect that the property was the subject of larceny in place of the indefinite statement "which may be the subject of larceny". The counts set out the kind of property taken, and, as we view it, the question of whether or not cattle is a subject of larceny is a matter for the court; so, therefore, the portion of the averment criticized is mere surplusage. The indictment was sufficient.

The court, during the trial, permitted Charles H. Byrd, a farmer and stock dealer of Pennsylvania, to testify to the fact that he too had sold cattle to defendant under similar circumstances a week or more prior to the assignment, and had never been paid, for the mere purpose of showing design, etc. Later, the court struck out the evidence, as too remote, and admonished the jury to disregard the same. The defendant takes the position that the effect of this testimony could not be effectively erased from the minds of the jury, and was therefore prejudicial error. As a general rule, the court's specific instruction to disregard evidence cures error in its admission. *State* v. *Kincaid,* 104 W. Va. 396, 140 S. E. 338; *State* v. *Hill,* 52 W. Va. 296, 43 S. E. 160. And we

148

cannot see wherein this evidence could have made such an impression on the jury that it could not be eradicated.

State's instructions were drawn on the theory of the case already set out, and we see no error in them. The instructions Nos. 11 and 12 for defendant, which were refused, were substantially covered by his instructions 9 and 10, so that he could not have been prejudiced by their refusal. The court is not required to duplicate instructions, where the ones given fully cover the case.

Under the circumstances, we see no reason for disturbing the action of the trial court, and therefore affirm the judgment.

*Affirmed.*