STATE OF WEST VIRGINIA *v.* PAUL C. ROUZER *et al.*

(CC 690)

Submitted January 10, 1945. Decided January 30, 1945.

*Ira J. Partlow,* Attorney General, and *Lester Reynolds,* for plaintiff.

*H. G. Shores, Ernest A. See* and *Emory L. Tyler,* for defendants.

Rose, Judge:

Paul C. Rouzer, Luke McDowell and H. L. Drake were indicted in the Circuit Court of Mineral County for a felony. Each filed a demurrer to the indictment, and the defendant, Drake, interposed a special plea, to which the State demurred. The court sustained the demurrer to the special plea, overruled the demurrers to the indictment, and, on its own motion, certified to this Court certain questions of law which arose on said demurrers.

The indictment charges that during the fiscal years beginning July 1, 1937, July 1, 1938 and July 1, 1939, the defendant, Rouzer, was the county superintendent of schools of Mineral County, the defendant, McDowell, was a clerk in the office of the board of education of said county, and the defendant, Drake, the manager of the Keyser High School Bookstore, which was maintained and operated, by said board of education, by means of money from the general current and county building and maintenance funds of the board; that the defendants, as such agents of the board, sold a large quantity of books from the store, receiving the money therefor, whereby it became and was the duty imposed by law "* * * to preserve, keep, and maintain proper and adequate records, as prescribed by law, of all transactions relating to the purchase and sale of school books and text books and the operation of said Book Store and the expenditure of such public money as aforesaid, for and on behalf of the Board of Education * * *"; and that "* * * the said Paul C. Rouzer, Luke McDowell, and H. L. Drake, unlawfully and feloniously, did conceal the account and record of the aforesaid purchases and sales of school books and text books and the sums of money received therefor and in connection therewith, and did conceal the account so required by law to be kept in connection with the receipt

and expenditure of said public funds as aforesaid, with intent in so doing to conceal the true state of the account of the purchases and sales of school books and text books and the monies received in connection therewith by and on behalf of the said Board of Education of Mineral County during the period aforesaid, against the peace and dignity of the State."

The separate demurrers to the indictment are elaborate, assigning many grounds and differing substantially so as to apply specifically to each separate defendant, and need not be stated in full. The questions certified are:

"1. Does the indictment in this case charge a crime against either one, or all of the defendants, as contemplated by Code 61-3-22?

2. Does the indictment clearly and plainly inform the defendants, and each of them, of the nature of the charge against them?

3. As to the defendant, H. L. Drake, if the indictment is held to be sufficient in law, does such a charge under Chapter 61, Article 3, Section 22 of the Code contemplate and embrace the crime of embezzlement, and is the ruling in sustaining the demurrer interposed by the State correct?"

The indictment is admittedly brought under Code, 61-3-22, which is as follows:

"If any officer, clerk or agent of this State, or of any county, district, school district or municipal corporation thereof, or of any banking institution or incorporated company, or any clerk or agent of any firm or person or association of persons not incorporated, make, alter or omit to make any entry in any book of account of, or in any account kept by such State, county, district, school district, municipal corporation, banking institution, incorporated company, firm or person, or association of persons, or mutilate, destroy or conceal any such account or book of accounts, with intent in so doing to conceal the true state of any account, or to defraud the State or any county, district, school district, municipal corpo-

ration, banking institution, company, firm or person, or with intent to enable or assist any person to obtain money to which he was not entitled, such officer, clerk or agent shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than ten years."

This statute is a very old one. It can be traced back beyond the foundation of this state to the Virginia Code of 1849. Yet we are not able to find the report of any case brought to this Court or to the Supreme Court of Virginia involving this statute. Evidently it has been found to be of little practical utility. A probable explanation of this phenomenon may be found in the extremely narrow scope of the statute itself.

It will at once appear that the statute does not relate exclusively to officers, clerks or agents of the state or subdivisions thereof, but applies as well to such employees of "any banking institution or incorporated company, * * * firm or person or association of persons not incorporated." The crime established by the statute, therefore, may be committed by an agent or clerk who falsifies, mutilates, destroys or conceals a book of account or an account kept by any employer, public or private. The statute does not relate to the failure of a public agent to keep accounts. That default is covered by a wholly different act and is not made a felony. Code, 6-9-3 and 4. Such an offense as is charged against these defendants, while employed by a board of education, will not constitute an offense under Code, 61-3-22, unless the same misfeasance would have been a felony if committed by them in private employment.

Also, it cannot be overlooked that the statute deals with the falsification, mutilation, destruction or concealment of "any book of account" or "any account" which is "kept", and not with one which is merely required to be kept. If the book of account, or the account, is actually "kept", it is a felony to falsify, mutilate, destroy or conceal the same, whether the keeping is required by law or not. Conversely, no matter what requirement the law makes as

to the keeping of such book of account, or account, if the employer, public or private, does not, in fact, keep such a record, the offense defined in this statute cannot arise. This is perfectly clear as regards a book of account, since it is impossible to falsify, mutilate, destroy or conceal a book which is not in existence. But the same proposition applies equally to an "account". This word has no fixed technical meaning, and may connote a mere claim and counterclaim which have never been reduced to writing; but in ordinary use it signifies a written memorial of business transactions between parties. Black's Law Dictionary, 3rd Ed. p. 27, defines the word as "A detailed statement of the mutual demands in the nature of debt and credit between parties, arising out of contracts or some fiduciary relation." Various courts have approved and applied this definition. "A statement in writing, of debts and credits, or of receipts and payments; a list of items of debts and credits, with their respective dates." *Rensselaer Glass Factory* v. *Reid,* 5 Cow. (N. Y.) 593. "An account is a list or statement of monetary transactions, such as payments, purchases, sales, debts, credits, etc., in most cases showing a balance or result of comparison between items of an opposite nature, e. g. receipts and payments." *Purvis* v. *Kroner,* 18 Or. 414, 23 P. 260. An account is "a sum stated on paper; a registry of a debt or credit; an entry in a book of things bought or sold, of payments, services, etc. * * * a list or catalogue of items, whether of debits or credits." *Theobald* v. *Stinson,* 38 Me. 149. "An account is defined to be a detailed statement of mutual demands in the matter of debt and credit between parties, arising out of contract, or some fiduciary relation." *McWilliams* v. *Allan,* 45 Mo. 573.

But the word does not stand isolated in the statute. Qualifying expressions therein make its meaning perfectly clear. The account dealt with is one that is "kept" by the employer. It is not possible to conceive of an account being kept without presupposing some sort of writing. Indeed, the offense defined in this statute includes the making, altering, or omission to make "any entry in any book of account of, or in any account." How

can an entry be made in, or omitted from, an account, or altered, unless the account itself be physically in existence? Or how can one "mutilate, destroy or conceal" an account which only exists as a mental conception. The statute clearly has as its object the protection of written memorials of business transactions. Such a writing, of itself, may become powerful evidence of the facts it purports to record. The offense dealt with in the statute thus partakes somewhat of the nature of forgery, with a like penalty.

Nor is the indictment aided by the allegation that the defendants "did conceal the account so required by law to be kept in connection with the receipt and expenditure of said public funds as aforesaid". A board of education is a creature of statute with no other powers than those expressly or impliedly given thereby. *Dooley* v. *Board of Education,* 80 W. Va. 648, 93 S. E. 766; *Honaker* v. *Board of Education,* 42 W. Va. 170, 24 S. E. 544; *Shinn* v. *Board of Education,* 39 W. Va. 497, 20 S. E. 604. Whether the operation of a book store as described in the indictment was so conducted as to be within the powers of the board, express or implied, we cannot determine from the record before us. If the enterprise was within the powers of the board, proper accounts would have been required by law to be kept in connection therewith. Code, 6-9-3 and 5; subsection 7, section 25, article 5, chapter 8 of the Acts of the Legislature of 1933, Ex. Sess. But even if such accounts were required of the defendants, or either of them, by law, or by an order of the board, the simple failure to maintain and keep the same is not made an offense under the statute in question, nor by any other which we discover.

The conclusion which we have reached is fortified by examination of the history of the statute which we have under appraisal. This enactment appears first in section 22 of chapter 192 of the Virginia Code of 1849, and reads as follows:

"If any officer or clerk of any bank or joint stock company make, alter, or omit to make, any

> entry in any account kept in such bank or by such company, with intent in so doing to conceal the true state of such account, or to defraud the said bank or company, or to enable or assist any person to obtain money to which he was not entitled, such officer or clerk shall be confined in the penitentiary not less than two nor more than ten years."

This statute, in its original form, clearly deals with the written records or accounts of the corporations mentioned, and nothing else, and was inherited in that form by this State. It was reenacted in its exact original form in section 21 of chapter 145 of the West Virginia Code of 1868, and was not modified until 1881. By section 21 of chapter 22 of the Acts of the Legislature of that year it took its present form. It is to be observed, however, that notwithstanding the broadening of the statute by this amendment in many aspects, no change was made in the character of the account protected, other than to make the law applicable also to "any book of account". The statute, therefore, from its origin to the present, appears clearly to have been intended to apply to nothing other than accounts actually being kept in writing.

We, therefore, answer the first interrogatory in the negative, and hold that the indictment does not charge an offense.

The indictment being fatally defective in this respect, it is needless to consider the questions whether the intent charged in the indictment is sufficient in form and substance, and whether the special plea interposed by the defendant, Drake, is demurrable.

*Reversed.*

Fox, Judge, dissenting:

I am unable to agree with the majority opinion in this case for the following reasons:

*FIRST*: While I agree that there is no express statutory provision authorizing a board of education to operate a store for the sale of school books, I am of the opinion

that the general powers of the board, which authorize it to exercise general supervision over education within the district for which it is elected, are broad enough to include the activity of furnishing, school books, and, if necessary, operating a store for that purpose. I further believe that when the employees of the board are authorized by it to operate such a store, the duty of an accounting for the funds appropriated for that purpose, and for moneys received from the sale of books, arises under the several provisions of Article 9, Chapter 6 of the Code, and that an account, within the meaning of the statutes, and in a legal sense, exists. If so, it follows that the concealment of an account occurs when there is a total failure to keep a written record of transactions growing out of the operation of such store, and that such a concealment is a violation of Code, 61-3-22.

*SECOND*: It may be that, in a technical sense, an account is a written record of one or more transactions, and, as I understand, the majority opinion is based on that theory. But in a broader sense, and under the statute governing public affairs, an account, in legal contemplation, exists when any person is made the custodian of public funds, and required to account therefor. If that person fails, in any written account actually kept by him, to keep an accurate record of the transactions; omits any item thereof; or conceals any transaction by failing to make a record thereof, with the intention defined by the statute, it is clear that he comes within the provisions of Code, 61-3-22. If he fails in this respect, he commits a serious fault; but if he keeps no account whatever he commits a greater fault. In the one instance he conceals one or more items of a number of transactions; and in the other, he conceals the record as to all such transactions. The majority opinion would punish the lesser fault, and relieve from the consequences of the greater. I do not believe that the statute was ever intended to bring about such a result, and, in my opinion, the same should be so construed as to make it apply to complete failure to keep any account such as I think the statute contemplates. Much may be

said in support of the position of the majority, if we apply the technical definition of an account to the statute in question. In general, criminal statutes are construed against the State and in favor of the accused; but what the statute was intended to prevent was the falsification or concealment of accounts with intent to defraud, or with intent to enable or assist any person to obtain money to which he was not entitled, and such concealment is more effectually consummated by keeping no account whatever than by merely omitting certain items thereof. Notwithstanding the rule stated above, I fear we are allowing a too strict and technical construction of the statute to bring about a result never intended, and I would therefore affirm the ruling of the Circuit Court of Mineral County.

I am authorized to say that Judge Kenna concurs in this dissent.