STATE OF WEST VIRGINIA

*v.*

H. V. STOUT

(CC 830)

Submitted September 25, 1956. Decided November 13, 1956.

*John G. Fox,* Attorney General, *Harold A. Bangert, Jr.,* Assistant Attorney General, for plaintiff.

*Paul H. Kidd,* for defendant.

Lovins, Judge:

The Circuit Court of Braxton County sustained a demurrer to an indictment which, omitting the formal parts, reads as follows:

> "* * * on the 22nd day of September, 1954, Bower Mining Company and H. V. Stout were indebted unto J. G. Singleton in a sum of money in excess of One Thousand Dollars, ($1,000.), which said sum of money was at said time due the said J. G. Singleton from Bower Mining Company and H. V. Stout for labor performed and material furnished by the said J. G. Singleton to Bower Mining Company and H. V. Stout prior to the said 22nd day of September, 1954; that as a payment upon said indebtedness then and there owing to the said J. G. Singleton by Bower Mining Company and H. V. Stout the said H. V. Stout on said 22nd day of September, 1954, in the said County of Braxton did unlawfully and feloniously issue and deliver unto the said J. G. Singleton for value and with intent to defraud the said J. G. Singleton, his certain check of the words and figures following:

Number 188

BOWER MINING COMPANY

Lost Creek, W. Va.   Sept. 22, 1954

Payment on Dozer
    work
    Pay to The Order of J. G. Singleton          $1000.00
    One Thousand and no/100 - - - - - Dollars

THE HARRISON COUNTY BANK
Lost Creek, W. Va.                    Bower Mining Company
                                          H. V. Stout

> When he, the said H. V. Stout then and there knew that neither he, nor the said Bower Mining Company had sufficient funds on deposit in or credit with the said The Harrison County Bank of Lost Creek, West Virginia, with which to pay said check * * *".

The defendant demurred to the indictment on the

grounds that the issuance of the check was not a violation of common law or statute.

The Circuit Court sustained the demurrer and certified to this Court the following question:

> "* * * the following points of law or fact have been made: That the making, issuance and delivery of a check on a bank in payment of a preexisting debt to his creditor by one who had no funds, or insufficient funds, to his credit in such bank to pay the same, as alleged in said indictment, is not a violation of law, either at common law or by statute."

The question certified as above quoted impliedly submits a question of fact. This Court has no jurisdiction to determine a question of fact on certificate. Under Code, 58-5-2, only "* * * question arising upon the sufficiency of a summons or return of service, or challenge of the sufficiency of a pleading * * *", may be certified. *State* v. *De Spain,* 139 W. Va. 854, 81 S. E. 2d 914. See *Van Gilder* v. *Morgantown,* 136 W. Va. 831, 68 S. E. 2d 746; *Clayton* v. *County Court,* 96 W. Va. 333, 123 S. E. 189; *Jones* v. *Coal Co.,* 82 W. Va. 506, 96 S. E. 797; *City of Wheeling* v. *Telephone Co.,* 81 W. Va. 438, 94 S. E. 511.

The certified question calls for two answers: (a) Was there liability at common law? (b) Is there liability under the present statute?

A check or bill of exchange arose from the custom or dealings of merchants. A check given by a resident of the state to another resident of the same state, and drawn on a bank situate therein, is an inland bill of exchange. Others are foreign bills of exchange.

The law merchant was gradually incorporated into the common law of England. 7 Am. Jur., Bills and Notes, Sections 13-14.

Prior to the enactment of 30 Geo. II, Chapter 24, §1, obtaining money or property by means of false pretense, being somewhat analogous to obtaining money or proper-

ty by a worthless check, was prosecuted under the general designation of a "cheat". *Williams* v. *The Territory*, 108 P. 243, 27 L. R. A., New Series, page 1032. The English statute above mentioned made it a crime to send or deliver a writing with or without names subscribed thereto for the purpose of obtaining from a person money, goods, wares or merchandise with intent to cheat or defraud. See Volume 22, Statutes at Large, years 1757-59, page 114. So far as we have been able to ascertain, there was no liability at common law for the specific act of making and delivering a worthless check.

Chapter 76, Acts of the Legislature, 1911, Regular Session, denounced as a crime the issuance and delivery of a worthless check. The pertinent portion of that statute provided in substance that if any person made, issued and delivered to another person for value any check or draft on any bank and obtained from such other any credit, money, goods or other property of value, and having no funds or insufficient funds on deposit to his credit in said bank with which said check could be paid, should be guilty of a misdemeanor if the check was under $20.00; and if in excess of $20.00, the maker should be guilty of a felony. Other provisions not pertinent appear in Chapter 76 *idem*. In the case of *State* v. *Pishner*, 72 W. Va. 603, 78 S. E. 752, the statute passed in 1911 was considered and this Court in the *Pishner* case held that "The making, issuance and delivery of a check on a bank in payment of a preexisting debt, to his creditor, by one who has no funds or insufficient funds to his credit in such bank to pay the same, is not an offense under section 34, chapter 145, Code, a section added by chapter 76, Acts 1911." Chapter 76, Acts of the Legislature, 1911, Regular Session, was amended and reenacted by Chapter 41, Acts of the Legislature, Regular Session, 1929, (Code, 61-3-39). The Act as it now reads provides in part that:

"Any person who, with intent to defraud, shall make, draw, issue, utter or deliver to another any check, draft or order for the payment

> of money upon any bank, or other depository,
> and thereby obtain from such other any credit,
> *credit on account,* money, goods or other proper-
> ty or *thing of value,* \* \* \*" [emphasis supplied]

shall be guilty of a misdemeanor if the check or draft
or order be under twenty dollars or shall be guilty of a
felony if the amount of such check, draft or order is
twenty dollars or over.

The statute goes on to define punishment for the
crimes so denounced. Provision is also made for the
payment of such check, draft or order and it is further
provided that the person making, issuing, uttering and
delivering such draft or order on behalf of the corpora-
tion or in its name by any officer or agent shall subject
the officer or agent to the penalties provided in the
statute. The statute further provides for venue which
is not material to the discussion in this opinion.

The form of the indictment for giving a worthless
check will be found in Code, 62-9-15, as amended by
Chapter 60, Acts of the Legislature, 1953, Regular Ses-
sion. The indictment here considered is substantially
in the form so set forth.

The indictment alleges that the check here in question
was given as payment on a pre-existing debt with fraud-
ulent intent. It seems that the state relies on the phrase
in the statute "credit on account", thereby attempting
to distinguish the case at bar from the case of *State* v.
*Pishner, supra.*

An examination of the Journals of the two Houses of
the Legislature discloses that efforts were made to strike
out the words "credit on account". Such efforts were
unsuccessful. See Journal of the Senate, 1929, page 627
and Journal of the House, 1929, at page 570.

The words "credit on account" have a common, ordi-
nary meaning of general acceptation and the meaning
thereof depends on the context in which such words ap-
pear. See *Coons* v. *Home Life Ins. Co. of New York* (Ill.

App.) 9 N. E. 2d 419. The word "account" is likewise a word of ordinary and common acceptation and may be defined as a claim or demand by one person against another creating a debtor-creditor relation. *In re Stratman's Estate*, (Iowa) 1 N. W. 2d 636. See *Knox* v. *Moskins Stores, Inc.*, 241 Ala. 346, 277 So. 49; *Ewart* v. *Cass* (S. D.) 95 N. W. 915. Conceivably, an account may mean a record of dealings showing debits or credits existing between two or more persons. See *State* v. *Rouzer*, 127 W. Va. 392, 32 S. E. 2d 865. The word "credit" may signify an entry on the credit side of a book of account or such word may indicate an extension of time for payment of the purchase price of goods or property sold by one person to another. It is thus noted that the words "credit on account" may have different meanings. In the body of the opinion of this Court in the case of *State* v. *Pishner, supra,* the following language appears:

> "It is true the word 'credit' is often applied to an entry on the credit side of an account, but the 'credit' meant by the statute clearly applies to an entry on the debit side of the ledger, or to the thing actually parted with on the faith of the false pretense. The 'credit' intended by the statute according to the very terms thereof must be a thing 'of value', acquired by means of the check. Of what value is a mere entry on a book? Neither the check, nor entry would amount to payment. The creditor could still sue on the original account. He does not lose it by accepting a bogus check; nor does the mere entry of a check on the book of a creditor amount to a thing of value to the maker of the check."

It is to be noted that the statute here considered still retains the words "or other property or thing of value". We cannot place any value on a mere credit on account arising out of the giving of a worthless check. The acceptance of a check does not pay a debt. The payment is only conditional upon the integrity of the check, in the absence of an agreement to the contrary. *Hare* v. *Insurance Co.*, 114 W. Va. 679, 173 S. E. 772; *Unemp. Com.* v. *Casualty Co.*, 130 W. Va. 147, 154, 42 S. E. 2d 820. As

related to the crime of false pretense, see *State* v. *Augustine,* 114 W. Va. 143, 171 S. E. 111; *State* v. *Laskey,* 122 W. Va. 93, 96, 7 S. E. 2d 439.

Of course, if the giver of a worthless check obtains additional credit by reason thereof and purchases goods, wares or merchandise as a result thereof, he obtains something of value. But where the giving of a bad check simply results in the entry of an item of credit on the pre-existing debt, no money or property of value passes from the creditor to the debtor.

In the instant case the debt of Stout or the Bower Mining Company remained the same after the check was dishonored. No property or other thing of value passed from Singleton to the Bower Mining Company or Stout. See Annotation 95 A. L. R. page 500. The check was a conditional payment and being dishonored, the conditional payment was abortive. No prejudice resulted to Singleton and no advantage resulted to Stout and the Bower Mining Company or either of them.

We therefore answer that the indictment here considered does not charge a crime under Code, 61-3-39, and therefore, the demurrer to the indictment was properly sustained.

*Ruling affirmed.*